UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE T. NOVAK,<br><br>    Plaintiff,<br><br>    v.<br><br>ANTHONY J. PRINCIPI, Secretary,<br>Department of Veteran Affairs,<br><br>    Defendant. | No. 02 C 7206<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

Plaintiff George Novak ("Novak") has brought suit against his former employer, the Veterans Administration (the "VA" or the "Agency") for discrimination under the Rehabilitation Act, claiming that he was constructively discharged from his job after two hip surgeries. Both parties have now filed for summary judgment. For the reasons below, Novak's motion is denied and the Agency's motion is granted.

*I. Background*

Novak began his employment at the Hines VA hospital in 1985 as a plumber/pipe fitter. At the time he was hired, he suffered from a 30% service connected disability due to an injury he suffered during his military duty in which his left shoulder and back were seriously injured. In 1991, Novak transferred to the machine shop as a result of his difficulty in reaching overhead to do work due to that injury. In the machine shop, Novak worked as an industrial mechanic under supervisor Michael Marchitto. His duties included repair and maintenance of a variety of mobile and stationary hospital equipment. At the same time he was reassigned, Novak requested further

restrictions on the work he was required to do, such as a limitation on ladder-climbing, a weight restriction on overhead lifting, and a restriction from working in tight areas.

In June 1996, as the result of an automobile accident, Novak suffered injuries severe enough to require hip replacement surgery. After the surgery and rehabilitation, Novak was able to return to his position, but with additional limitations that he not be assigned to work with ladders at all, not be required to work on roofs, not be required to work in tight spaces at all, and a lifting limitation of 25-30 pounds. In addition, he was allowed to use a motorized cart due to his inability to walk long distances. During this time, Novak continued to receive positive performance evaluations.

In 2000, Novak sustained another hip injury after being struck by a pick-up truck. As a result, he underwent a hip revision procedure in April of that year. Novak's orthopaedic surgeon informed the hospital that Novak's physical limitations required new restrictions, such as only returning to work after two months of rest and performing a job that required no standing, lifting, squatting or stooping for four months. In July of 2000, the surgeon recommended further restrictions, such as: no climbing ladders, no working on roofs or uneven areas, no stooping, bending, kneeling or lifting over five pounds, no work in restricted or tight areas, no pushing or pulling of heavy equipment, and no standing or walking for prolonged periods.

On July 19, 2000, the hospital advised Novak that his restrictions could not be accommodated within the machine shop, so instead he would be assigned as a surgical unit elevator operator for four months. As he neared the end of that assignment, on October 30, Novak's surgeon advised the agency to extend the light duty assignment until March 14. On March 2, 2001, the surgeon again recommended that the light duty assignment be continued until

July 13, 2001. In a letter dated April 19, the agency approved the extension of light duty through July 13, but informed Novak that after that date the Agency might be unable to continue to provide a light duty assignment. If it were unable to do so, he would either be referred to the Great Lakes Human Resource Management Service ("GLHRMS") for reassignment or separated from his position based on an inability to perform.

On June 25, the doctor released Novak to work without any restrictions. From June through September 2001, Plaintiff claimed that he repeatedly requested a transfer to other positions, but all of these requests were denied. However, on November 29, Novak's surgeon advised the agency that the resumption of his duties had caused Novak pain in his hips, groin, and legs. He recommended that, from December 3 until February 4, 2002, Novak be assigned to a job that was "sedentary in nature and that he have a comfortable, firm, seated chair with the seating not less than 19 inches from the ground." The Agency subsequently assigned Novak to perform light-duty clerical work in the Engineering Service. On January 31, Novak's doctor sent a letter recommending that he be kept on the same light duty restrictions until retirement[1] and reiterating his advice that Plaintiff have a job that was sedentary in nature.

Novak claims that throughout his light duty assignments there were many incidents in which he was harassed and made fun of by his co-workers, including the Chief of his division, James Predlides, but no action was taken by management to discourage that behavior. In one incident in particular, on October 5, 2001, two of Novak's co-workers, Chuck Schweitzer and Jerry Pacholski were parked in a truck. When Plaintiff walked in front of the truck, Pacholski

---

[1] Novak had stated to his doctor and others at the time that he intended to retire soon, but now claims that he only did so because he was forced into retirement by his supervisor, hence his claim of constructive discharge.

revved the engine and made the truck jump forward towards him. Novak filed a report about the incident with Predlides a week later, in addition to filing a report with the VA Chief of Police. In his police statement, Schweitzer stated that he believed that the incident was just "horseplay."

On February 11, Novak's counsel sent correspondence to Brenda Stamps, the Agency's regional Equal Employment Opportunity ("EEO") Officer for Hines, Illinois, requesting that the VA: (1) appoint a representative to participate in the process of addressing and resolving Novak's requests for accommodation; (2) disclose all available funded positions in the commuting area; and (3) unconditionally offer to reassign Plaintiff to all positions which satisfied the legitimate, nondiscriminatory job requirements. The EEO Office of Resolution Management responded on April 1 that the requested actions were beyond the EEO Office's statutory authority, and were instead the responsibility of the Director of the Hospital. Novak does not claim that he forwarded the same request to the Director.[2]

On April 4, 2002, Novak applied under Voluntary Early Retirement Authority to retire on September 27, 2002. That same day, Predlides recommended that the application be approved. The application was eventually approved on April 17, 2002. Novak claims that the actions of the Agency directly caused his retirement, effective September 27.

---

[2] Novak also complains that he did not receive any communication from GLHRMS, but, he was only told there would be communication from GLHRMS when his surgeon's letter recommending the extension of his light duty assignment brought his total time on light-duty to nearly a full year–from July 2000 until July 2001. However, after that letter, he was released to work without restrictions, and further communication from GLHRMS was unnecessary. Novak does not claim that he tried to contact human resources himself at any point.

## II. Summary Judgment Standard

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The movant must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III. Discrimination under the Rehabilitation Act

Count I of Novak's claim is under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq*. The Rehabilitation Act prohibits any recipient of federal funds from discriminating against a qualified individual solely on the basis of his or her disability. In order to establish a prima facie case that he has been discriminated against, Novak must show that: (1) he suffers from a disability; (2) he is qualified to perform the essential functions of the position, with or without reasonable accommodation; and (3) he has suffered an adverse employment action as a result of his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005).[3] In the

---

[3]The only difference between a prima facie case of discrimination under the Americans with Disabilities Act and the Rehabilitation Act is the Rehabilitation Act's requirement that the Defendant receive federal financial assistance. *See Jackson*, 414 F.3d at 810 n.2. Defendant has not disputed this element.

employment context, the Rehabilitation Act requires that courts use the standards and provisions relating to employment of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et. seq*. (the "ADA"). *See* 29 U.S.C. § 794(d).[4]

***Qualified Individual with a Disability***

Under the ADA, a *qualified* individual with a disability is "an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Novak has a disability under the ADA if he: (1) has a physical or mental impairment which substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); *see also Nawrot v. CPC Int'l*, 277 F.3d 896, 903 (7th Cir. 2002).

Novak has not argued that he had a record of an impairment or that he was regarded as having an impairment, so I will only discuss whether or not he actually had such an impairment. This requires a three-part test that asks: (1) if Plaintiff's condition constitutes an impairment under the ADA; (2) whether the activity Plaintiff claims is impaired constitutes a major life activity; and (3) whether the impairment substantially limits the performance of that major life activity. *See EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).

---

[4]Novak also mentions the hospital's failure to observe Exec. Order 13164, 65 Fed. Reg. 46,565 (July 26, 2000), requiring federal agencies to establish procedures to facilitate the provision of reasonable accommodation. However, Novak may not base a claim on this order, because it specifically states that it "does not create any right or benefit, substantive or procedural, enforceable at law or equity against the United States, its agencies, its officers, its employees, or any person." *Id*. The failure to observe the order also does not prove (or even establish a presumption) that the hospital did not attempt to reasonably accommodate his needs. Therefore it is irrelevant.

An impairment is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal . . . cardiovascular . . . ." 29 C.F.R. § 1630.2(h)(1). Under this definition, Novak's well-documented problems with his hip and shoulder certainly qualify as physiological conditions affecting his musculoskeletal system.[5]

***Substantial Limitation of a Major Life Activity***

The ADA's regulations define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). This list is not exhaustive, and can include any "basic activities that the average person in the general population can perform with little or no difficulty." *See Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 675 (7th Cir. 1998) (citation omitted). Novak claims that his impairments affected numerous activities, including his ability to work, walk, perform housework, care for his wife, drive his automobile for extended periods, or otherwise engage in repetitive physical activities. Lastly, he claims that his impairments have also affected his ability to engage in sexual relations with his wife.

*Major Life Activity of Walking*

In order to be considered disabled with respect to walking, "the employee must be 'substantially limited' in [his] ability to walk, and the limitation must be permanent or long term, and considerable compared to the walking most people do in their daily lives." *Sears*, 417 F.3d

---

[5]Defendant claims that Novak waived his claim that his shoulder condition constituted a disability at the EEOC administrative level by testifying that he was not contending that his shoulder was a disability. Based on the transcript, it appears that Novak was only referring to the fact that his shoulder injury occurred while he was in the military, not during his employment at the hospital. Therefore he has not waived any argument concerning his shoulder.

at 802. In *Sears*, the employee showed that she was unable to walk the equivalent of one city block without her leg and foot becoming numb. Novak has not provided such proof. To support his contention of a disability, he primarily points to his physician's statement that he is disabled from performing his job. By itself, this conclusory statement from a doctor is not even sufficient to avoid summary judgment, much less enough for me to grant summary judgment in his favor. *See Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 951 (7th Cir. 2000). The additional information concerning Novak's use of a motorized cart at work is also not enough evidence to grant Plaintiff's motion. However, it does establish a material question of fact.

*Major Life Activity of Working*

In order to claim that he was disabled from working, Novak must show that his ability to work was substantially limited. This means that Novak is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes . . . ." 29 C.F.R. § 1630.2(j)(3)(i). A "class of jobs" is the job from which Novak was disqualified, as well as the "types of jobs using similar training, knowledge, skills or abilities . . . ." 29 U.S.C. § 1630.2(j)(3)(ii)(B). A "broad range of jobs in various classes" is the job from which Novak was disqualified as well as "other jobs not utilizing similar training, knowledge, skills or abilities . . . ." 29 U.S.C. § 1630.2(j)(3)(ii)(C); *see also EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001).

Novak cannot show that he was significantly restricted from performing a broad range of jobs, because he has already worked in, and had repeatedly requested to be transferred to, other positions within the hospital. So, he must show that he was restricted from a class of jobs. The evidence presented and the work restrictions placed on Novak by his physician show that

8

Plaintiff was unable to perform the duties of his particular job in the Engineering Service. However, if that is the only job that Novak is only unable to perform, it does not constitute a substantial limitation on his ability to work. *See* 29 C.F.R. § 1630.2(j)(3)(i); *see also Murphy v. United Parcel Serv.*, 527 U.S. 516, 523 (1999). Novak has not presented enough information for me to grant his motion for summary judgment that he was precluded from a whole class of jobs, but the implications of his physical limitations, and his use of a cart during part of his time working at the hospital, establish a material question of fact about his ability to work.

*Other Major Life Activities*

The other activities that Novak claims he is substantially impaired from performing are not considered major life activities. Mowing the lawn is not considered a major life activity. *See Moore*, 221 F.3d at 951. Caring for oneself is presumed to be a major life activity. *See Nawrot*, 277 F.3d at 905. However, Novak does not claim he is substantially impaired in this respect. He only claims that he has difficulty in caring for others. He does not offer any other cases in which a court has agreed that caring for others is a major life activity; nor does he offer any evidence that it should qualify as such.

Novak also claims a loss of sexual relations. Although sexual reproduction is considered a major life activity, *see Bragdon v. Abbott*, 524 U.S. 624, 638 (1998), it is unclear whether or not engaging in sexual relations should be considered similarly. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 763-64 (7th Cir. 2001). Even assuming that having sexual relations is a major life activity, Novak must substantiate his claim with either documentation or testimony beyond his general assertion that he is afraid of reinjuring his hip. *See id*. He has not done so.

9

Since there is a substantial question of material fact that Novak is disabled, his motion for summary judgment is denied. I will now focus solely on the remainder of Defendant's motion.

***Reasonable Accommodation***

The ADA requires the employer and employee to engage in an interactive process in order to determine the appropriate accommodation. *See Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 632-33 (7th Cir. 1998); *Sears*, 417 F.3d at 797. If an employee shows that he was not reasonably accommodated, and the employer was the party responsible for the breakdown in the interactive process, then the employer will be liable. *Sears*, 417 F.3d at 797. Both parties agree that Novak could not perform the essential functions of his job as an industrial equipment mechanic with or without any reasonable accommodation. However, besides taking actions such as making existing facilities accessible, restructuring the job, and modifying the employee's work schedule, reasonably accommodating a disabled employee may also include reassigning him to a vacant position. 42 U.S.C. § 12111(9).

> The reassignment provision makes clear that the employer must also consider the feasibility of assigning the worker to a different job in which his disability will not be an impediment to full performance, and if the reassignment is feasible and does not require the employer to turn away a superior applicant, the reassignment is mandatory.

*EEOC v. Humiston-Keeling, Inc.*, 227 F.3d 1024, 1027 (7th Cir. 2000). Novak claims that reassignment was the appropriate action to take under his circumstances.

Defendant claims that I cannot reach the issue of whether the Agency was responsible for a breakdown in the interactive process because Plaintiff has not fulfilled his initial burden of showing that a vacant position existed for which he was qualified. *See Jackson*, 414 F.3d 806 at

813. Novak disagrees, claiming that he repeatedly identified appropriate vacant positions, asked his supervisor to reassign him, and was rebuffed each time.

Novak lists several positions which he was interested in: the electric shop, the biomed shop, working in a property manager position, elevator operator, delivering packages in the warehouse, the mail room, answering phones, and working in the laundry room. He claims that each time he asked to transfer to one of these positions, his supervisor, Predlides, summarily refused his request without any explanation. However, the fact that Novak requested to be reassigned to these positions does not mean that there were actual vacancies. Novak must show some evidence other than his own conclusory statements that he could have taken one of those positions if Predlides had not stopped him. *See Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). Novak has not presented any such evidence, for example, he has not even provided a list of vacant positions during this time period.

Even the fact that Novak had previously worked as an elevator operator and served in the property management position does not save him, because there is no evidence that either of these jobs were more than temporary light duty assignments. "Occasional opportunities to work in another department are not equivalent to a vacancy for a permanent position. Pointing to a current vacancy is required . . . ." *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997). As a result, Novak has not shown a material question of fact that the hospital failed to reasonably accommodate him.

*Constructive Discharge*

Lastly, in order to succeed, Novak also needed to show that he was constructively discharged. In order to prove constructive discharge, "an employee must show both that a hostile work environment existed and 'that the abusive working environment became so intolerable that

[his] resignation qualified as a fitting response.'" *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382-83 (7th Cir. 2005) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 135 (2004)). In this case, it is questionable that the abuse reached the intolerable levels necessary to support a claim. *See Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 877 (7th Cir. 1999) (listing examples of tolerable and intolerable conditions). However, since I have already found that summary judgment should be granted, I do not need to address that issue.

For the aforementioned reasons, Defendant's motion for summary judgment is granted.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: July 24, 2006